UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------- X
TODD ROBINSON,

                                   NOT FOR PUBLICATION

               Petitioner,

-against-                         **MEMORANDUM AND ORDER**

SUPT. D.E. LACLAIR,            09-CV-3501 (KAM)
Franklin Correctional Facility

               Respondent.
---------------------------------------- X

**MATSUMOTO, United States District Judge:**

        On August 3, 2009, Todd Robinson ("petitioner") filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1, Pet. for Writ of Habeas Corpus ("Pet.").) On October 15, 2009, D.E. LaClair ("respondent") filed an opposition and memorandum of law in opposition to petitioner's habeas petition. (ECF No. 5, Resp't Affidavit in Opp. to Writ of Habeas Corpus ("Resp't Opp."); ECF No. 5-1, Resp't Mem. of Law ("Resp't Mem.").) Following court orders requesting additional information, respondent filed a letter, attaching several supporting exhibits, on December 21, 2010. (ECF Orders dated 11/18/10 and 11/23/10; ECF No. 6, Ltr. by D.E. LaClair.) Having considered all of the submissions, the court denies the petition for habeas corpus.

**BACKGROUND**

        Petitioner's habeas petition seeks relief from his March 14, 2006 conviction in the Supreme Court of the State of New York,

Richmond County, for one count of Burglary in the Second Degree, N.Y. Penal Law § 140.25(2), three counts of Criminal Possession of Stolen Property in the Fourth Degree, N.Y. Penal Law § 165.45(2), two counts of Criminal Possession of Stolen Property in the Fifth Degree, N.Y. Penal Law § 165.40, and one count of Petit Larceny, N.Y. Penal Law § 155.25.

The conviction was in connection with an incident that took place in Staten Island on January 30, 2005. Carlee Goodridge ("Goodridge") found petitioner, an uninvited stranger, asleep on her couch when she arrived home shortly after midnight. (Resp't Opp. at 2, 4; ECF No. 5-6, Direct Appeal at 1,[1] Br. for Defendant-Appellant ("Pet. Direct Appeal Br.") at 3.) Upon seeing petitioner in her home, Goodridge called 911. (Id.) After petitioner explained that he was homeless and that he had hoped Goodridge, a real estate agent, could help him find a place to live, Goodridge tried to cancel the 911 call but was unable to do so. (Resp't Opp. at 2, 4-5; Pet. Direct Appeal Br. at 3.) The police arrived shortly thereafter. (Resp't Opp. at 5.) The police determined that there were no signs of forced entry, but while escorting Goodridge through her house, Goodridge discovered that several items in her house, including clothing, mail, and a remote control, had been moved, and that a can of food had been opened and placed in a bowl. (Id.; Pet. Direct Appeal Br. at 3.)

---

[1] As all direct appeal materials were filed as one document, the court refers to the page number assigned by the Electronic Court Filing system ("ECF"), which marks the beginning of the particular direct appeal document referenced.

Petitioner was then searched, and the police found a pair of Goodridge's underwear in his pants pocket and a stack of credit cards, a driver's license, and a check belonging to Goodridge's neighbors in his jacket pocket. (Resp't Opp. at 5-6; Pet. Direct Appeal Br. at 3.) Petitioner was arrested. (Resp't Opp. at 3, 6; Pet. Direct Appeal Br. at 3.) The police searched petitioner's belongings at the homeless shelter in Orange County, New York, where petitioner had been staying, finding additional credit cards and two savings bonds belonging to Goodridge's other neighbors. (Resp't Opp. at 3, 6-7; Pet. Direct Appeal Br. at 7-8.)

Petitioner was first indicted on February 17, 2005 under Richmond County Indictment No. 28/2005 with one count of Burglary in the Second Degree, one count of Petit Larceny, two counts of Criminal Possession of Stolen Property in the Fourth Degree, and two counts of Criminal Possession of Stolen Property in the Fifth Degree. (See Pet., Ex. 2 at 33[2]; Resp't Opp. at 3.) Petitioner was arraigned on this indictment, Indictment No. 28/2005, on February 23, 2005. (See Pet., Ex. B at 33; Resp't Mem. at 4; ECF No. 6-1, Bucksheet for Indictment No. 28/2005.) The superseding indictment, Richmond County Indictment No. 71/2005, was filed on March 24, 2005. (See Pet. Direct Appeal Br. at 1.) The superseding indictment charged petitioner with one count of Burglary in the Second Degree, one count

---

[2] As the exhibits are not numbered, the court refers to the numbers assigned by the Electronic Case Filing System ("ECF").

of Petit Larceny, four counts of Criminal Possession of Stolen
Property in the Fourth Degree, and six counts of Criminal Possession
of Stolen Property in the Fifth Degree. (Resp't Opp. at 3.)[3]
Petitioner was arraigned on the superseding indictment, Indictment
No. 71/2005, on April 6, 2005. (See Resp't Mem. at 4; ECF No. 6-2,
Bucksheet for Indictment No. 71/2005.) The previous indictment,
Indictment No. 28/2005, was dismissed on April 6, 2005. (See ECF
No. 6-3, Transcript of Arraignment on Indictment No. 71/2005 at 3.)

The case thereafter proceeded to trial. At the close of
the trial, and during jury deliberations, the jury sent a note to
the court stating that it was unable to reach a decision as to the
Burglary in the Second Degree charge. (Resp't Opp. at 7; Pet. Direct
Appeal Br. at 10; ECF No. 5-4, Transcript of Trial pages 534 to end
("Trial Tr. II") at 695.) Both the prosecutor and counsel for
petitioner asked the judge to read a "deadlocked jury" instruction.
(Resp't Opp. at 7; Trial Tr. II at 695-96.) The court and counsel
agreed on a standard instruction that was published by the Office
of Court Administration. (Resp't Opp. at 7; Trial Tr. II at 696.)

---

[3] Respondent's opposition contains inconsistent information regarding the counts
charged in the superseding Indictment No. 71/2005. On page 3, paragraph 6 of the
opposition, respondent states that Indictment No. 71/2005 charged petitioner with,
inter alia, four counts of Criminal Possession of Stolen Property in the Fourth
Degree and six counts of Criminal Possession of Stolen Property in the Fifth Degree.
(Resp't Opp. at 3.) Paragraph 7, however, states that Indictment No. 71/2005
charged petitioner with only three counts of Criminal Possession of Stolen Property
in the Fourth Degree and two counts of Criminal Possession of Stolen Property in
the Fifth Degree. (Id.) This difference is not relevant to the determination
of petitioner's claims for habeas relief.

The jury ultimately found petitioner guilty on seven counts: one count of Burglary in the Second Degree, three counts of Criminal Possession of Stolen Property in the Fourth Degree, two counts of Criminal Possession of Stolen Property in the Fifth Degree, and one count of Petit Larceny. (Resp't Opp. at 1-2, 7; Pet. Direct Appeal Br. at 10-11.) On March 14, 2006, petitioner was sentenced as a second felony offender to concurrent terms of incarceration of ten years on the Burglary count with five years of post-release supervision, two to four years on the Criminal Possession in the Fourth Degree counts, one year each on the Criminal Possession in the Fifth Degree counts, and one year on the Petit Larceny count. (Resp't Opp. at 2, 8.)

Petitioner appealed his conviction to the New York State Appellate Division, Second Department. Petitioner submitted two briefs to the Appellate Division: one submitted by counsel, see Pet. Direct Appeal Br., and one submitted pro se by petitioner, see ECF No. 5-6, Direct Appeal at 50, Pro Se Br. for Defendant-Appellant ("Pro Se Direct Appeal Br.")). The brief submitted by counsel argued that the prosecution presented insufficient evidence to establish that petitioner had an intent to commit a crime when he entered the Goodridge home, and therefore the conviction on Burglary in the Second Degree had to be reversed. (See Pet. Direct Appeal Br. at 11-20.) The pro se brief argued, inter alia, that the charges against petitioner were dismissed by the use of a superseding

indictment, that the indictment was otherwise defective, that petitioner did not receive a timely arraignment, and that the Allen charge read to the jury violated his rights. (See generally Pro Se Direct Appeal Br.; Resp't Opp. at 8-9.)

The Appellate Division affirmed petitioner's conviction on October 7, 2008, holding that petitioner's "contention that his conviction for burglary in the second degree must be reversed because the People failed to prove by legally sufficient evidence that he intended to commit a crime at the time he entered the premises is unpreserved for appellate review." People v. Robinson, 55 A.D.3d 636, 636 (N.Y. App. Div. 2008). The court also reasoned that "[i]n any event, viewing the evidence in the light most favorable to the prosecution, . . . the evidence was legally sufficient to establish the defendant's guilt beyond a reasonable doubt . . . [and] we are satisfied that the verdict of guilt was not against the weight of the evidence." Id. The Appellate Division also rejected the arguments raised in petitioner's supplemental pro se brief as "unpreserved for appellate review" and "in any event, . . . without merit." Id. On February 9, 2009, the Appellate Division denied petitioner's request to reargue his direct appeal. See People v. Robinson, 2009 N.Y. Slip Op. 63185(U) (N.Y. App. Div. 2009).

The New York State Court of Appeals subsequently denied petitioner leave to appeal on February 25, 2009. See People v. Robinson, 12 N.Y.3d 762 (N.Y. 2009). On June 26, 2009, the Court

of Appeals also denied petitioner's application for leave to appeal the Appellate Division's February 9, 2009 decision denying petitioner's motion for leave to reargue his appeal.  See People v. Robinson, 12 N.Y.3d 920 (N.Y. 2009).

Petitioner raises the following claims in his habeas petition: (1) that he was prosecuted by a defective indictment, which had been dismissed; (2) that he was denied due process and a fair trial because of a delay in his arraignment, i.e. that he was denied a speedy trial;[4] (3) that the trial court erred by presenting the jury with a coercive Allen charge; and (4) that the Appellate Division denied him due process by affirming his conviction because the evidence was legally insufficient to satisfy the requirements for Burglary in the Second Degree.[5]  (See Pet.; see also Resp't Opp. at 10.)

Respondent argues that petitioner is not entitled to habeas relief because his "proposed grounds for relief were each denied by an adequate and independent state ground," here, that the

---

[4] Petitioner groups the defective indictment and untimely arraignment claims, listing both claims under "Ground One" in his habeas petition.  (See Pet. at 6.)  However, as they raise different issues, the court analyzes each separately.

[5] It is difficult to understand, from the petition alone, exactly what petitioner claims as his fourth ground for relief.  Respondent, in its opposition and memorandum of law, characterized this last claim a legal insufficiency claim with respect to the conviction for Burglary in the Second Degree, the same claim raised by appellate counsel on direct appeal.  (See Resp't Mem. at 6-10.)  Petitioner did not file a reply, despite the opportunity to do so, to correct that interpretation or otherwise clarify his position.  Further, the court cannot discern any other meaning that would raise a meritorious claim for relief.  Therefore, the court accepts respondent's interpretation of petitioner's fourth claim for relief as a legal insufficiency claim with respect to his conviction for Burglary in the Second Degree.

claims were unpreserved at trial for direct appellate review. (Resp't Mem. at 2-3.)  Respondent additionally argues that petitioner's claims are without merit.  (Resp't Mem. at 4-10.)

**DISCUSSION**

**I.   Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), established a deferential standard that federal courts must apply in reviewing state court decisions on habeas review.  Under AEDPA, a federal court may grant habeas relief with respect to a federal claim adjudicated on the merits in state court only if the adjudication of the claim resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  In addition, "a determination of a factual issue made by a State court shall be presumed to be correct," and the applicant for habeas relief has the "burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Furthermore, a habeas petition shall not be granted unless the petitioner "has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  Even if the exhaustion requirement is satisfied, federal habeas corpus review may be barred

by the independent and adequate state law grounds doctrine, which
provides that a federal court may "not review a question of federal
law decided by a state court if the decision of that court rests on
a state law ground that is independent of the federal question and
adequate to support the judgment." Coleman v. Thompson, 501 U.S.
722, 729 (1991).

In the instant action, petitioner presented the claims
raised in his petition to the state courts on direct appeal of his
conviction. (See Pet. Direct Appeal Br.; Pro Se Direct Appeal Br.)
Therefore, the claims are exhausted.[6] However, the claims are
dismissed under the independent and adequate state law ground
doctrine, as explained below. Moreover, even if the claims raised
in the petition were not procedurally barred by the independent and
adequate state law doctrine, the claims lack merit.

## III. Independent and Adequate State Law Ground

Petitioner's claims are dismissed under the independent
and adequate state grounds doctrine because on direct appeal the
Appellate Division found these claims to be unpreserved for appellate
review under the contemporaneous objection rule. Robinson, 55
A.D.3d at 636. "Federal courts generally will not consider a federal

---

[6] Respondent argues that, to the extent that petitioner claims that the Appellate
Division acted improperly in denying his appeal, that claim of misconduct is not
exhausted, as petitioner raises this issue for the first time in his habeas
petition. (See Resp't Mem. at 6 n.1.) However, as explained in the preceding
note, the court interprets petitioner's last ground for relief as a legal
insufficiency claim with respect to his conviction for Burglary in the Second
Degree, and not a claim alleging misconduct on the part of the Appellate Division.

issue in a case 'if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Garvey v. Duncan, 485 F.3d 709, 713 (2d Cir. 2007) (quoting Lee v. Kemna, 534 U.S. 362, 375 (2002)). "This rule applies regardless of whether the independent state law ground is substantive or procedural and whether the case is in federal court on direct review or from state court via a habeas corpus petition." Garvey, 485 F.3d at 713 (citing Lee, 534 U.S. at 375).

A state law ground is "only adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state." Garvey, 485 F.3d at 713 (quoting Lee, 534 U.S. at 376). The Supreme Court has noted that although a firmly established and regularly followed rule will ordinarily preclude review of a federal claim, "[t]here are . . . exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." Lee, 534 U.S. at 376. In Lee, the Supreme Court identified three factors (the "Lee factors") to guide a federal court's determination of whether application of a state law ground is "adequate" to preclude consideration of a federal question:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the

realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (citing Lee, 534 U.S. at 381-85). These Lee factors "are not a three-prong test: [rather] they are guideposts to aid inquiry" of adequacy. Clark v. Perez, 510 F.3d 382, 391 (2d Cir. 2008); see also Cotto, 331 F.3d at 240 (noting that the Lee factors "were not presented as a 'test' for determining adequacy, we use them as guideposts in 'evaluat[ing] the state interest in a procedural rule against the circumstances of a particular case.'" (quoting Lee, 534 U.S. at 381-85)).

Alternatively, a federal court may also review a federal claim that is barred by an independent and adequate state law ground if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; see also Cotto, 331 F.3d at 239 n.10 (noting that "a habeas petitioner may also bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice").

In the instant action, the New York State Appellate Division held that petitioner failed to preserve his defective indictment, delayed arraignment, Allen charge, and legal

insufficiency[7] claims for appellate review under the

"contemporaneous objection" rule.[8]  See Robinson, 55 A.D.3d at 636

(noting that claims raised in pro se appellate brief, including

petitioner's first three federal habeas claims, were "unpreserved

for appellate review," citing the contemporaneous objection rule,

N.Y. Crim. Proc. Law § 470.05(2)).[9]  Under New York law, "an issue

is properly preserved for appeal as a matter of law only if the

appellant objected on that ground in the trial below."  Glenn v.

Bartlett, 98 F.3d 721, 724 n.2 (2d Cir. 1996) (citing N.Y. Crim. Proc.

Law § 470.05(2) and New York State case law).

It is well-settled that the contemporaneous objection rule

has been recognized as a firmly established and regularly followed

---

[7] Even though defense counsel moved to dismiss the charges following the close of the government's case and at the conclusion of the trial (see Trial Tr. II at 540-41, 549), a general motion to dismiss is not enough to preserve the legal insufficiency claim raised by petitioner here.  It is clear that under New York law, "the preservation requirement compels that the argument be 'specifically directed' at the alleged error" in order to preserve a legal insufficiency challenge for review on direct appeal.  See People v. Gray, 652 N.E.2d 919, 921 (N.Y. 1995); see also People v. Bork, 907 N.Y.S.2d 907, 907 (N.Y. App. Div. 2010) (holding that "defendant contends that the evidence is legally insufficient to support the conviction" but made "only a general motion for a trial order of dismissal at the close of the People's case and thus . . . failed to preserve her contention for [appellate] review").

[8] The contemporaneous objection rule, N.Y. Crim. Proc. Law § 470.05(2), provides in part that "[f]or purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same."

[9] The fact that the Appellate Division found petitioner's claims also to be without merit, in addition to finding them unpreserved, does not affect the outcome. "'[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.'"  Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (quoting Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990)).

independent state procedural ground in New York barring federal review of a federal claim. See, e.g., Garcia v. Lewis, 188 F.3d 71, 76-78 (2d Cir. 1999) (holding that "the Appellate Division's explicit invocation of the procedural bar constitutes" an independent and adequate state law ground). Thus, the critical issue in this case is whether application of the contemporaneous objection rule was "adequate" under the Lee factors to preclude federal review. See Cotto, 331 F.3d at 240 (noting that "[a]fter Lee, . . . the relevant question . . . is whether application of the procedural [contemporaneous objection] rule is 'firmly established and regularly followed' in the specific circumstances presented in the case, an inquiry that includes an evaluation of the" Lee factors).

        The Lee factors indicate that the application of the firmly established and regularly followed contemporaneous objection rule in this case was adequate to preclude federal review of petitioner's claims. First, because the procedural bar is the contemporaneous objection rule, the first Lee guidepost "is less applicable . . . because the lack of a contemporaneous objection would not, almost by definition, be mentioned by the trial court." Cotto, 331 F.3d at 242. Further, because the trial court had no opportunity to make a determination about petitioner's claims, it is impossible to know whether perfect compliance would have changed the trial court's decision under the first Lee factor. See Donaldson v. Ercole, No.

06-5781-pr, 2009 U.S. App. LEXIS 624, at *5-*6 (2d Cir. Jan. 14, 2009).

Under the second <u>Lee</u> factor, well-established state case law demanded compliance with the contemporaneous objection rule in the specific circumstances presented, namely, objection to: (1) a defective indictment, <u>see, e.g.,</u> <u>People v. Nash</u>, 908 N.Y.S.2d 708, 710 (N.Y. App. Div. 2010) ("The defendant's argument on appeal that the counts . . . were vague and duplicitous is not preserved for appellate review . . . as the defendant failed to make a pretrial motion to dismiss those counts of the indictment within 45 days of his arraignment."); <u>People v. Iannone</u>, 384 N.E.2d 656, 663-64 (N.Y. 1978) (holding that "the defendants in these two appeals have failed to preserve a question of law which this court may review and have waived their objections to the sufficiency of the factual allegations in the indictments by which they were brought before the courts"); (2) speedy trial, <u>see, e.g.,</u> <u>People v. Jordan</u>, 466 N.E.2d 145, 146 (N.Y. 1984) (holding that because "[n]o application for the relief now sought having been made in Supreme Court in the criminal action and accordingly there having been no denial of a request for such relief, as a matter of appellate procedure, as the Appellate Division recognized, there was no ruling of the trial court in this action to be reviewed by the Appellate Division, or now in our court"); <u>People v. Mack</u>, 759 N.Y.S.2d 878, 878 (N.Y. App. Div. 2003) (denying review of unpreserved speedy trial issue); (3) a coercive Allen

charge, see, e.g., People v. Cowen, 672 N.Y.S.2d 138, 138 (N.Y. App. Div. 1998) ("The defendant's contention that the court's Allen charge was coercive is not preserved for appellate review since he did not raise a specific objection on that ground before the trial court." (citation omitted)); Francesehi v. Walsh, 2004 U.S. Dist. LEXIS 9404, at *25 & n.4 (E.D.N.Y. May 24, 2004) ("New York courts have consistently found Allen charge claims to be unpreserved where the defense counsel did not alert the trial court to the offensive language at issue."); and (4) legal insufficiency of the evidence, see, e.g., People v. Gray, 652 N.E.2d 919, 920-21 (N.Y. 1995) ("We hold that where a defendant seeks to argue on appeal . . . that the People have failed to establish [an element of the offense charged], preservation of that contention is required by an appropriate objection.").  This second factor, therefore, weighs in favor of respondent.

Finally, because petitioner's counsel never raised any objection to the superseding indictment, the timeliness of his arraignment, the Allen charge, or the legal sufficiency of the evidence for the burglary charge, as reflected by the record, the third Lee factor – "whether petitioner had substantially complied with the rule given the realities of trial," Cotto, 331 F.3d at 240 (citation omitted) – weighs in favor of respondent as well. Inherently, no "substantial compliance with a contemporaneous objection rule" is possible when the issues were not "even implied

in the trial court." Donaldson, 2009 U.S. App. LEXIS 624, at *7.
Thus, weighing all three Lee factors the court finds that not only
is the contemporaneous objection rule firmly established and
regularly followed, but it is also "adequate" under the specific
circumstances of this case to prelude federal review of petitioner's
defective indictment, speedy trial, improper Allen charge, and legal
insufficiency claims.

Additionally, there is nothing in the record to suggest
that petitioner can establish cause and prejudice or a fundamental
miscarriage of justice to excuse the procedural default in this case.
See Cotto, 331 F.3d at 239 n.10.  Accordingly, the Appellate
Division's denial of these claims for failure to preserve precludes
federal review of the claims.  See, e.g., Garcia, 188 F.3d at 78-79
("[I]f a state appellate court refuses to review the merits of a
criminal defendant's claim of constitutional error because of his
failure to comply with . . . a contemporaneous objection rule, a
federal court generally may not consider the merits of the
constitutional claim on habeas corpus review." (internal quotation
marks and citation omitted)).  Petitioner's request for habeas
relief is denied.

## IV.  Alternatively, Claims Are Dismissed On The Merits

Moreover, even if petitioner could overcome the procedural
bar in this case and allow the court to reach the merits of his claims,
his petition would still be dismissed.  First, the defective

indictment claim does not present a question of federal law proper for consideration by the court on federal habeas review. Second, the remaining claims are without merit.

Under AEDPA, a federal court can grant habeas relief only if the state court's determination of the claims on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). "An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (quoting Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001)). Here, the Appellate Division ruled that petitioner's legal insufficiency claim was "unpreserved for appellate review" and that "[i]n any event, viewing the evidence in the light most favorable to the prosecution, . . . the evidence was legally sufficient to establish [petitioner's] guilt beyond a reasonable doubt." Robinson, 55 A.D.3d at 636 (internal citation omitted). Further, the Appellate Division found petitioner's remaining claims to be "unpreserved for appellate review and, in any event, . . . without merit." Id. (internal citation omitted). This disposition by the Appellate Division constitutes a determination on the merits. See Zarvela v. Artuz, 364 F.3d 415, 417 (2d Cir. 2004) (concluding that state court had

17

reviewed the claim on the merits where it found "petitioner's claim to be unpreserved, and, in any event, without merit," constituted an adjudication on the merits). Therefore, assuming the court could reach the merits of petitioner's claims, habeas relief could only be granted if the Appellate Division's determination was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

### A. Deficient State Indictment Not Proper For Federal Habeas Review

Petitioner first claims that he was denied due process and a fair trial because he was prosecuted under a defective indictment. (See Pet. at 6.) Petitioner is not entitled to federal habeas review of this claim because the claim does not raise a question of federal law proper for consideration by this court. Claims concerning state grand jury proceedings do not entitle a petitioner to federal habeas relief. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) (finding that "claims concerning a state grand jury proceeding are . . . foreclosed in a collateral attack brought in a federal court"). Indictment by a grand jury in a New York State is a right dependent on the New York State Constitution and other state laws, not on federal law, and federal habeas relief may not be granted for violations of state law. See, e.g., Venable v. Walsh, 2009 U.S.

Dist. LEXIS 27887, at *31 (E.D.N.Y. Mar. 19, 2009) (finding that a defective state indictment claim "fails to state a violation of federal law"); Fulton v. Greene, 2009 U.S. Dist. LEXIS 102971, at *14 (W.D.N.Y. Nov. 5, 2009) ("It is well-settled that any errors in state grand jury proceedings involving sufficiency of grand jury evidence, use of misleading and prejudicial evidence, and instructions given to the grand jury do not entitle a petitioner to habeas relief."); Whaley v. Graham, 2008 U.S. Dist. LEXIS 82987, at *21-*22 (E.D.N.Y. Oct. 15, 2008) ("As a threshold matter, the form of a grand jury indictment is statutorily created . . . and such alleged defects in a state grand jury proceeding cannot provide grounds for habeas relief.").

Further, even if a defective state indictment constituted proper grounds for federal habeas review, any injury that petitioner claims from the defective indictment was cured by the jury's verdict of guilt beyond a reasonable doubt at his trial. See Thigpen v. Brown, 2008 U.S. Dist. LEXIS 101679, at *39 (E.D.N.Y. Sept. 26, 2008) (holding that "any problem with the indictment was cured upon petitioner's conviction" (citing United States v. Mechanik, 475 U.S. 66, 73 (1986))); Chacko v. United States, 2005 U.S. Dist. LEXIS 11380, at *16 (S.D.N.Y. June 8, 2005) (finding that "an error in a grand jury proceeding is generally considered harmless once a defendant has been convicted at trial after a jury has found that defendant

guilty of crimes charged in the indictment beyond a reasonable doubt").

Consequently, even if petitioner could overcome the procedural bar for his defective indictment claim, the claim must be dismissed because petitioner does not raise a question of federal law appropriate for federal habeas review and, in any event, any defect in his indictment was cured by the finding of guilt beyond a reasonable doubt by the jury.

### B. *No Speedy Trial Violation*

Petitioner next alleges that he was denied due process and a fair trial because he received an "untimely [s]upreme court [a]rraignment." (See Pet. at 6.) Petitioner was arrested on January 30, 2005. (See Resp't Opp. at 2-3, 6.) Petitioner was first indicted on February 17, 2005 under Richmond County Indictment No. 28/2005. (See Pet., Ex. 2 at 33; Resp't Opp. at 3.) Petitioner was arraigned on this indictment, Indictment No. 28/2005, on February 23, 2005. (See Pet., Ex. B at 33; Resp't Mem. at 4; Bucksheet for Indictment No. 28/2005.) The superseding indictment, Richmond County Indictment No. 71/2005, was filed on March 24, 2005. (See Pet. Direct Appeal Br. at 1.) Petitioner was arraigned on the superseding indictment, Indictment No. 71/2005, on April 6, 2005. (See Resp't Mem. at 4; Bucksheet for Indictment No. 71/2005.) This delay, petitioner argues, denied him due process and a fair trial.

The right to a speedy trial is guaranteed by the Sixth Amendment.  See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .").  This fundamental right is imposed on the states by the Due Process Clause of the Fourteenth Amendment.  Klopfer v. North Carolina, 386 U.S. 213, 223 (1967).  The Supreme Court has adopted a balancing test to determine whether the right to speedy trial has been violated in a particular case.  See Barker v. Wingo, 407 U.S. 514, 530 (1972).  Courts faced with speedy trial violation claims must weight whether: (1) the delay before trial was uncommonly long; (2) the government or the defendant is more to blame for that delay; (3) the defendant asserted his right to a speedy trial in due course; and (4) the defendant suffered prejudice.  See Doggett v. United States, 505 U.S. 647, 651 (1992).  The first inquiry – whether the delay was uncommonly long – is considered a threshold issue, and courts will not reach the rest of the balancing test if this threshold inquiry is not satisfied.  See id. at 651-52 ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between the accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay, since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." (internal quotation marks and citations omitted)); see also United States v. Solomon, 1996 U.S. Dist. LEXIS 9948, at *3-*4 (S.D.N.Y.

July 16, 1996) ("Before embarking upon this four-part inquiry, a court must determine if the delay is "presumptively prejudicial" or only an "ordinary" delay. . . . If the latter, then the claim must fail and the four-part inquiry is mooted." (internal citation omitted)).

Although there is no precise formula for determining what constitutes a presumptively prejudicial delay, see, e.g., Barker, 407 U.S. at 531 ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."), courts in this district have found that "[a] delay of many months is sufficient to establish presumptive prejudice." Varricchio v. County of Nassau, 702 F. Supp. 2d 40, 51 (E.D.N.Y. 2010); see also Unites States v. Vassell, 970 F.2d 1162, 1164 (2d Cir. 1992) (noting general consensus that "a delay of over eight months meets [the presumptive prejudice] standard, while a delay of less than five months does not").

In the instant action, petitioner complains only of the delay in his arraignment, not of the delay between his arraignment and trial. (See Pet.) The delay from the time petitioner was arrested, on January 30, 2005, to his arraignment on the first indictment, on February 23, 2005, was 25 days, and on the superseding indictment, on April 6, 2005, was 2 months and 8 days. This length of delay is insufficient to meet the threshold inquiry of a presumptive prejudice and does not trigger the rest of the analysis

for a speedy trial violation.  See, e.g., United States v. Infanti, 474 F.2d 522, 527 (2d Cir. 1973) ("[T]he length of time from arrest to indictment was 21 months and from arrest to trial 28 months, neither extraordinary."); Holmes v. Bartlett, 810 F. Supp. 550, 562 (S.D.N.Y. 1993) (finding that "the length of delay, eighteen months," between arrest and arraignment "was considerably shorter than the delays in other cases where courts found no Sixth Amendment violation"); Vassell, 970 F.2d at 1164 (noting consensus that "a delay . . . of less than five months does not" meet the presumptive prejudice standard); Varricchio, 702 F. Supp. 2d at 51 (delay of many months meets standard); Velez v. New York, 941 F. Supp. 300, 318 (E.D.N.Y. 1996) ("As an initial matter, a court will not entertain a speedy trial claim unless the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay" and "[h]ere, the 377-day period between Petitioner's arrest and the commencement of his trial, while apparently sufficient to trigger a speedy trial inquiry, . . . is certainly not extraordinary, and federal courts have found that much longer delays do not violate the Sixth Amendment." (internal quotation marks and citations omitted)).  Furthermore, petitioner has made no showing of how the delay between his arrest and ultimate arraignment prejudiced his defense.  Having failed to satisfy the threshold inquiry requiring a showing of some prejudice by the delay, petitioner's speedy trial claim fails and the rest of the balancing

test inquiry is mooted.  <u>See, e.g.</u> <u>Solomon</u>, 1996 U.S. Dist. LEXIS 9948, at *4 (noting that if petitioner fails to show presumptive prejudice, "then the claim must fail and the four-part inquiry is mooted").

Therefore, the Appellate Division's determination that petitioner's speedy trial claim was without merit was not contrary to federal law or based on an unreasonable determination of the facts. Consequently, even if petitioner could overcome the procedural default, his claim for relief on the ground that he was untimely arraigned would be denied.

### C.   *Allen Charge Was Not Improper*

Petitioner next alleges that the trial court delivered an improper Allen charge to the jury after the jurors declared that they were deadlocked.[10]  (Pet. at 7; <u>Pro Se</u> Direct Appeal Br. at 37-38.) Specifically, petitioner claims that the Allen charge was coercive. (<u>Pro Se</u> Direct Appeal Br. at 37-38.)  Respondent argues that the charge was not coercive, and notes that the language of the Allen charge came directly from a standard deadlocked jury instruction published by the New York Office of Court Administration.  (Resp't

---

[10] In his supplemental <u>pro se</u> brief to the Appellate Division, petitioner called the Allen Charge, "the intimadation [sic] of the guilty verdict." (<u>Pro Se</u> Direct Appeal Br. at 38.)  Petitioner argued that the "[t]rial court must not attempt to coerc[e] or compel the jury to agree on a particular verdict . . . but pro[p]erly discharge its responsibilities, to avoid mistrial by encouraging jurors to adhe[re] to [their] oaths and make one final effort to review the evidenc[e] under the approp[r]iate circumstances[.]"  (<u>Id.</u>)

Mem. at 5.)  Further, respondent notes that the judge cautioned the jurors not to abandon their "conscientiously held beliefs."  (Id.)

Upon review of the trial record, the court finds that petitioner's Allen charge claim lacks merit.  A trial judge may give supplemental instructions to a deadlocked jury, asking the jury to continue deliberating to try to reach a unanimous verdict.  See Allen v. United States, 164 U.S. 492, 501-02 (1896).  However, the supplemental instructions must not "improperly coerce[]" the jury. Lowenfield v. Phelps, 484 U.S. 231, 237 (U.S. 1988).  In determining whether the supplemental charge is coercive, the charge must be considered "'in its context and under all the circumstances.'"  Id. (quoting Jenkins v. United States, 380 U.S. 445, 446 (1965)).  A reviewing court must determine whether the supplemental charge "pressured any juror to abandon any conscientiously held beliefs that were based on the evidence."  Ramirez v. Senkowski, 1999 U.S. App. LEXIS 20143, at *8 (2d Cir. 1999) (citing United States v. Ruggiero, 928 F.2d 1289, 1299 (2d Cir. 1991)).  If the instructions direct "jurors to consider the views of other jurors, specific cautionary language reminding jurors not to abandon their own conscientious beliefs is generally required."  Spears v. Greiner, 459 F.3d 200, 205 (2d Cir. 2006) (citing United States v. Henry, 325 F.3d 93, 107

(2d Cir. 2003) and Smalls v. Batista, 191 F.3d 272, 280 (2d Cir. 1999)).[11]

In the instant case, the trial judge specifically instructed the jurors not to abandon their conscientiously held beliefs. The judge emphasized, "I'm not asking any juror to violate his or her conscience or to abandon his or her best judgement [sic]. Any verdict you reach must be the verdict of each juror, and not merely acquiescence in the conclusion of others." (Trial Tr. II at 698.) The judge further instructed the jurors to "make every possible effort to arrive at a just verdict here. Make certain that the decision you reach is based solely on the evidence and the law, and is not influenced or affected by sympathy for or against any individual, or for or against either side." (Id. at 699.) The judge urged that while it is not "uncommon for a jury to have difficulty initially in reaching a unanimous verdict . . . [,] after further deliberations, most juries are able to reach a unanimous verdict." (Id. at 697.) The judge asked the jurors to "resume deliberations with an open mind," to "[h]ave the courage to be flexible" and "to change your position if a reevaluation of the evidence convinces you that a change is appropriate. Do not, out of pride or stubbornness,

---

[11] In Spears, the charge delivered by the trial court lacked the language reminding jurors "not to abandon their own conscientious beliefs." Spears, 459 F.3d at 206. Still, the court determined that the charge was not coercive because it "asked the jurors to consider the facts 'with an attempt to reach a verdict if that be possible,' and to continue deliberations 'with a view toward arriving at a verdict if that's possible.'" Id. (emphasis in original). The court also considered that the defense counsel failed to object to the charge, so the potential for coercion was not apparent from the charging. Id.

adhere to an opinion or conclusion that you no longer believe is correct." (Id. at 698.)

This review of the trial record demonstrates that the Allen charge read by the judge in petitioner's case was not coercive. The judge reminded the jurors not to violate their consciences and informed the jury that if they cannot "reach a unanimous agreement on a particular count, you cannot return a verdict on that count and a new trial would have to be scheduled as to that count or those counts." (Id. at 697.) Consequently, even if petitioner could overcome the procedural bar, his Allen charge claim would be dismissed on the merits because the Appellate Division's finding that the claim lacked merit was not contrary to federal law or based on an unreasonable determination of the facts in his case.

### D.   *Evidence Was Legally Sufficient*

Petitioner's final claim for relief is that the evidence at trial was legally insufficient to support his conviction for Burglary in the Second Degree. (Pet. at 14.) A legal insufficiency claim is cognizable on habeas review. See Jackson v. Virginia, 443 U.S. 307, 324 (1979). "In evaluating whether the evidence [was] sufficient [to sustain a conviction, the court] must view the evidence in the light most favorable to the prosecution." Einaugler v. Supreme Court of the State of New York, 109 F.3d 836, 840 (2d Cir. 1997) (internal quotation marks and citation omitted). The court must uphold a petitioner's conviction if "any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original).

When examining this type of claim, "[a] federal court must look to state law to determine the elements of the crime." Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999) (citations omitted). Under New York law, a person commits Burglary in the Second Degree when he or she knowingly enters or remains unlawfully in a building with the intent to commit a crime therein, and the building is a dwelling. N.Y. Penal Law § 140.25(2).

The elements of Burglary in the Second Degree, as defined under New York law, were proved beyond a reasonable doubt at trial. The jury heard evidence that petitioner entered the Goodridge home without permission. (See ECF No. 5-3, Transcript of Trial pages 300 to 533 ("Trial Tr. I") at 327-30, 369.) Further, the jury heard testimony that, upon inspection of her apartment, Goodridge discovered that petitioner had moved her mail and remote control, threw her children's clothes on the floor of a bedroom, and opened a can of food in the kitchen. (See id. at 334, 354-55, 371, 373.) The jury also heard testimony that the police officers found a pair of Goodridge's underwear in the petitioner's possession. (See id. at 336, 377, 402-03.) Finally, the jury heard evidence that petitioner was found in possession of credit cards and mail belonging to Goodridge's neighbors. (See id. at 380-90, 392, 404, 426-27, 430, 452-54, 473-74, 476-77.)

Viewing all this evidence in the light most favorable to the prosecution, as required under Supreme Court precedent, proof of the elements of Burglary in the Second Degree was sufficient to sustain the conviction.  Consequently, even if petitioner could overcome the procedural default, his legal insufficiency claim would be rejected because the Appellate Division's determination that the evidence was legally sufficient was not based on an unreasonable interpretation of the facts.

### CONCLUSION

Based on the foregoing, the court denies petitioner's application for a writ of habeas corpus.  Because petitioner has not made a substantial showing of the denial of any constitutional right, the court will not issue a certificate of appealability.  28 U.S.C. § 2253; Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds, United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability).  The court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this judgment denying the

/

/

/

/

/

petition would not be taken in good faith.  <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).  The Clerk of the Court is respectfully requested to serve a copy of this Memorandum and Order upon petitioner and to close the case.

**SO ORDERED**

Dated:     January 13, 2011
           Brooklyn, New York

                              _____/s/_____
                              KIYO A. MATSUMOTO
                              United States District Judge
                              Eastern District of New York